39 So.2d 720

## DODGE v. BITUMINOUS CASUALTY CORPORATION.

No. 38912.

Feb. 14, 1949.

Rehearing Denied March 21, 1949.

Durrett & Hardin, of Baton Rouge, and Seth Lewis, of Opelousas, for defendant, appellant, and applicant.

A. V. Pavy, of Opelousas, for respondent.

MOISE, Justice.

This is an ex delicto action to recover property damages against the insurer of a Ford truck. Plaintiff's car was involved in a collision about a half mile from Sunset, Parish of St. Landry, La., on December 6, 1945, at about 7 p. m., when he collided with the truck which, without flares, lights or other warning signals, was parked in the same path on the highway in which he was travelling. The petitioner alleges that he did not see the parked truck until he was right upon it and that it was dark and visibility was affected by traffic approaching from the opposite direction and he could not have possibly avoided the collision.

The defendant answered the petition and, in the alternative, charged that the plaintiff was guilty of contributory negligence. Thereafter, the defendant filed an exception of no cause of action, which was referred to the merits. After hearing, the district court gave judgment for the plaintiff. An appeal was taken to the Court of Appeal and with a slight adjustment the judgment was affirmed. Defendant applied for and writs were granted by this Court. The matter is now before us for review.

The exception of no cause of action filed by the defendant is re-urged here and, alternatively, on the merits and considering the evidence, defendant contends that as a matter of law plaintiff was guilty of contributory negligence and that it should have judgment, in reconvention, as prayed for against the plaintiff.

As a general rule, contributory negligence being a special defense cannot be pleaded on an exception of no cause of action, since negligence is a question of fact which must be determined by a trial on the merits. There is, however, an exception to this general rule. For example, if the inference can be drawn from the facts alleged by the plaintiff showing him to have been guilty of contributory negligence, this negligence can be determined as a matter of law by the judge. McMahon, Exception of No cause of Action in Louisiana, 9 T.L.R. 17, 22 (1934). The first clear rule on this subject was formulated in Gibbs v. Illinois Central R. Co., 169 La.

450, 125 So. 445. In that case the court held that an exception of no cause of action based on plaintiff's contributory negligence should not be maintained unless the facts alleged by the plaintiff show affirmatively that he was guilty of negligence and that such negligence was the proximate cause of the accident. This rule places the determination of each case on a trial on the merits rather than on paper pleadings. A decision on the exception of no cause of action is not a fair way to determine the rights of litigants, since the facts alleged in each case raise several problems materially affecting those rights which can best be solved by the hearing of evidence in the case.

In West v. Ray, 210 La. 25, 26 So.2d 221, 224, the Court stated:

"We conclude therefore that an affirmative defense, presented through exceptions or motions tried or triable only on the face of the petition, should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based."

■ The record shows that the petition as amplified by the evidence fully embraces the charge of negligence against the defendant. The plaintiff was driving his automobile at a legal rate of speed on the paved highway, it was nighttime, his lights were burning, and he was keeping a careful lookout ahead. The truck was station-

ary on the highway, without lights and without flares, as required by law, and was parked at an angle of about 45° on the paved highway, extending about 4 or 5 feet into the lane of traffic in which the plaintiff was travelling. The plaintiff's visibility was affected by the oncoming traffic with lights burning, approaching from the opposite direction and he did not see the unlighted parked truck until he was right on it and could not have avoided the collision because to swerve around the truck would have brought him head-on into an oncoming car. Mrs. Antoon, a passenger in the oncoming car, with headlights burning, was produced as a witness. She testified that there were neither lights, flares nor signals of any kind to warn the public that the parked truck was standing on the paved highway. The defendant offered no evidence to establish his alternative defense of contributory negligence.

■ From a chronological study of the respective acts of the Legislature relative to the issue of law in this litigation, we find that the Legislature in enacting into law the Rules of the Road, was trying to remedy the unsafe condition of the public highways of the State and to make them safe for the public. When the supreme law-making power of the State is legislating within constitutional limitations on the law of the road, it speaks on that subject with authority to the executive and the judicial branches of the government, as well as to the entire population of the

State. Section 5 of Act No. 232 of 1926 provided that a truck standing on the roadside from one half hour after sunset to one half hour before sunrise "* * * shall have the tail light, or a parking light mounted on the left rear fender, burning at all times." This Act was repealed, insofar as its provisions conflicted therewith by Act. No. 296 of 1928. In this latter Act the Rules of the Road were assembled under Title II. Section 50 "Required Lighting Equipment," mentions the period of time from one half hour after sunset to one half hour before sunrise, and specifies "lighted front and rear lamps or reflectors". However, no mention is made of a stopped or parked vehicle except in Section 26, which clearly covered stopping during daylight hours only. Act No. 21 of 1932, which repealed the 1928 Act but includes many provisions of the repealed Act verbatim, remedied this condition. Section 26 of Act No. 296 of 1928 became Rule 15, § 3 of the 1932 Act, with the following modifications: To subdivision (a) was added the proviso that if a vehicle were left parked during the hours of darkness, there should be displayed thereon appropriate signal lights sufficient to warn approaching traffic; and then comes a most pertinent provision fitting with plastic adaptation the Rule of the law for the road, which must be given great weight in a determination of responsibilities for an accident. To subdivision (c) was added the following: "* * * *it shall be the duty of the owner or driver of any such vehicle to remove the same as soon as possible and until removed to protect traffic from same at his responsibility.*" Act No. 21 of 1932 was repealed by Highway Regulatory Act No. 286 of 1938. This Act parallels the former law and Rule 15 remains the same except for some few minor details. Since the Act of 1938, no subsequent amendment has affected the potency of Rule 15.

In the instant case the driver of the parked truck failed to comply with the above quoted law enacted as a Rule of the Road. The responsibility to protect traffic on the road is fixed by statute. The liability for any injury or damage is therefore upon the defendant.

We have observed that heretofore, in sustaining an exception of no cause of action, it appears that the Court did not consider this Rule 15, in certain collision cases.

In addition to the above, Act No. 164 of 1936, amended by Act No. 215 of 1942, requires that trucks on the highways are to be equipped with portable flares and the manner in which said flares are to be displayed is therein set forth. The flares are to be visible for a distance of five hundred feet.

Where there is no law on a subject the court may adopt theoretical standards from common sense experience for the insuring of the safety of the road, but all must be tested by concrete factors—the law and the evidence. The letter of the law

must not be disregarded under the pretext of pursuing its spirit.

It is our conclusion that the evidence herein affirmatively shows that the defendant was guilty of negligence and that such negligence was the proximate cause of the collision.

For the reasons assigned, the writ of certiorari is recalled and the judgment of the Court of Appeal is affirmed at defendant's costs.

HAMITER, J., concurs in the decree.

O'NIELL, C. J., does not take part.

McCALEB, Justice (dissenting).

The question for decision in this case is whether plaintiff, in colliding with the rear of the unlighted parked truck, was guilty of negligence which contributed to the accident. Albeit, certiorari was granted for the specific purpose of considering whether the opinion of the Court of Appeal conflicts with our decision in Louisiana Power & Light Company v. Saia, 188 La. 358, 177 So. 238, which is neither discussed nor even cited in the main opinion.

As I understand it, the result reached herein is predicated on two views, (1) that neither plaintiff's petition nor the proof submitted by him exhibits contributory negligence on his part and (2) that, in any event, his fault is of no moment because subdivision (c) of Rule 15 of the Highway Regulatory Act, Act No. 286 of 1938, ren-

ders defendant liable under all circumstances and conditions. I will consider these rulings in their reverse order.

Rule 15 of the Highway Regulatory Act of 1938 prohibits the parking of vehicles on highways when it is practicable to leave them standing off the paved or travelled portion of the thoroughfare. And it provides that, if the vehicle is parked a half hour after sunset or before sunrise, it shall display appropriate signal lights thereon sufficient to warn approaching traffic of its presence. Subdivision (c) of the rule, on which the majority strongly relies, declares that the rule shall not apply to a disabled vehicle which is compelled to stop on the highway and provides that, in such cases, the owner or driver thereof shall be obliged to remove it as soon as possible and that "until removed to protect traffic from same at his responsibility."

In the case at bar, there can be no doubt that defendant was guilty of negligence. No one questions this, as the truck was parked at an angle on the public highway without lights. But this does not mean that plaintiff is entitled to recover without showing that, due to the surrounding conditions and circumstances, he was not able to detect its presence in time to bring his car to a stop. Yet the decision herein, employing subdivision (c) of Rule 15 of the Highway Act as a predicate, indicates that plaintiff must recover because defendant's violation rendered it absolutely liable, irrespective of plaintiff's fault. This

conclusion has the effect of abolishing the law of contributory negligence in cases involving a violation of Rule 15 of the Act. I cannot believe that the Legislature intended such a result.

The majority also resolved that plaintiff's petition and the evidence offered by him exhibited a freedom of negligence on his part. To this, I cannot agree as it is my view that the allegations of the petition, and more particularly the proof adduced in support thereof, are insufficient to take the case out of the rule approved in Louisiana Power & Light Company v. Saia, supra, that, where a motorist runs into the rear of a parked vehicle, he must affirmatively show the presence of unusual circumstances and conditions in order to be excused from negligence, even though the accident occurs at night. Compare Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377.

In the Saia case, plaintiff's automobile ran into a parked and unlighted truck and trailer on U. S. Highway 90 during the night time. It alleged in its petition that, although its driver was exercising due care in observing the highway ahead of him, he was unable to and did not see the unlighted truck and trailer in time to avoid striking it. In holding that the petition showed that plaintiff's driver was guilty of contributory negligence, in that he had violated Section 9, Subd. (g) 1 of Act. No. 21 of 1932, the State Highway Regulatory Act (then in force), requiring every vehicle to be equipped with burning headlights of sufficient strength to make clearly discernible any person on the highway for a distance of 200 feet ahead, the court said [188 La. 358, 177 So. 239]:

"In applying this provision of the statute, the courts have concluded that a motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision. O'Rourke v. McConaughey, La.App., 157 So. 598-606; Hutchinson v. [T. L.] James & Co., La.App., 160 So. 447; Sexton v. Stiles, 15 La.App. 148, 130 So. 821, 828; Blahut v. McCahil, La.App., 163 So. 195; Goodwin v. Theriot, La.App., 165 So. 342; Waters et al. v. Meriwether Transfer Co., 18 La.App. 18, 137 So. 578.

"It does not appear from the record that the plaintiff at any time offered an amendment to its petition to explain that there were any unusual circumstances which might have puzzled and confused the driver, as a prudent and careful operator, and prevented him from seeing the parked vehicle. * * *"

In the instant case, plaintiff has not exhibited any unusual circumstances which prevented him from observing the parked truck in time to avert a collision. The sole allegation of his petition is that "said parked truck was not visible to petitioner when

cars approached from the opposite direction, petitioner representing that at the time of the collision he was driving his automobile at a moderate speed, headlights burning properly, was keeping a careful lookout ahead and said parked truck suddenly loomed up in front of him, * * *." If plaintiff's headlights were burning properly and he was keeping a careful lookout, there was no reason why he could not see the truck, unless it be that he means, by his allegation that the truck was not visible "when cars approached from the opposite direction," that he was blinded by the headlights of those cars. But he does not allege this and he has at no time offered to amplify his petition in that respect. His averment that he was keeping a careful lookout is merely a conclusion; the law charges him with the duty of seeing that which could be seen by a prudent motorist.

But, even if it be generously assumed that the allegations of the petition are sufficient to eke out a cause of action, plaintiff's evidence falls far short of exhibiting any excuse for his failure to see the parked truck. When questioned about the accident, plaintiff stated as follows:

"Well, I was going to Bellvue. Was driving between forty and forty-five miles an hour, and I came upon a truck on the highway about a half mile from the city limits. I came upon a stopped truck in the

road, and I threw my brakes on because this truck was sitting on the road without any flares, no signal, or no warning of no kind, *and I was up on it when I saw it.* So I started to swerve out to miss the truck, but there were some cars approaching, so instead of having a head-in collision, I had to hit the truck, and after the accident there was Mrs. Antoon and Mrs. Henry Monteilh—was coming in the opposite direction." (Emphasis mine.)

Thus, it is manifest that plaintiff does not attempt to explain why he was unable to see the parked truck—he simply makes the bald statement that he did not see it. He does say that, after the accident, a car containing two ladies was coming in the opposite direction but at no time during his examination did he testify that he was blinded by the headlights of that or any other car;[1] that the night was foggy or that there was any other reason why he could not, by exercising the ordinary prudence required of every motorist, see the parked truck in time to avoid striking it.

Indeed, the facts of the case reveal that plaintiff was driving on a perfectly straight and level road of usual dimensions with gravel and dirt shoulders on each side some eight or nine feet wide—and he testified that his headlights were burning properly. Under such conditions, in the absence of a showing that he was blinded by the headlights of cars coming from the opposite

---

[1] The majority opinion declares: "The plaintiff's visibility was affected by the oncoming traffic with lights burning, approaching from the opposite direction * * *." I fail to find any evidence in the record to support this statement.

direction, it is patent that he is guilty of negligence in failing to see the parked truck and stop his car, which was travelling at 45 miles per hour, short of a collision. That his negligence had causal connection with, and was a contributing factor to, the accident can hardly be gainsaid.

I respectfully dissent.

On Application for Rehearing

PER CURIAM.

The defendant urges strenuously in support of its application for rehearing that the majority opinion in the instant case is erroneous because it failed to take into account the plea of contributory negligence, and because it erroneously interpreted Rule 15(c) of Section 3 of Act No. 286 of 1938 to mean that one who stops and parks a vehicle on the highway at night, and leaves it standing unlighted, is an insurer of a motorist who collides with such vehicle. The court did take into account the plea of contributory negligence and found from the facts of this case that the plaintiff was free of negligence. If there was any inference in the opinion that the defendant was the insurer of the plaintiff in this case it was unintentional, for we consider that whether a plea of contributory negligence is valid in such a collision case is dependent upon the facts of each particular case.

Rehearing refused.

McCALEB, J., dissents from the refusal of a rehearing.